UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| OLGA WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:08-cv-0523-TAB-RLY |
| AMERICAN FAMILY MUTUAL | ) | |
| AUTOMOBILE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Plaintiff Olga Wilson alleges that Defendant American Family Mutual Automobile Insurance Company breached the parties' insurance contract and breached the duty of good faith and fair dealing implied in all insurance contracts.  [Docket No. 1, Ex. 1 at ¶¶ 10, 17.]  American Family moved for summary judgment on all claims.  [Docket No. 36.]  For the reasons set forth below, the Court grants summary judgment.

**II.    Statement of Facts**

The following facts are undisputed.  On May 1, 2003, Nicolas Schuerman rear-ended Wilson's vehicle while it was stopped at a red light.  Schuerman was uninsured.  [Docket No. 36, Ex. B at ¶ 6; Docket No. 67, Ex. 1 at 26.]  Wilson's car was insured by American Family under a policy that provided uninsured motorist coverage.  [Docket No. 36, Ex. D at 2.]  Although Wilson declined medical assistance at the scene, [Docket No. 67, Ex. 1 at 36] she was seen the next day at Mid-Town Chiropractic complaining of moderate and constant cervical, lumbar, and

thoracic pain.  [Docket No. 67, Ex. 10 at 4.]  Wilson began treatment with Mid-Town.

On May 8, American Family's claim analyst, Nakia Tomlinson, contacted Wilson and obtained a recorded statement regarding the accident and Wilson's claimed injuries.  [Docket No. 36, Ex. B at ¶ 6.]  Wilson explained that on impact her head moved forward and then backward.  She also stated that Mid-Town solicited her as a patient.  [*Id.* at ¶ 9.]  On May 9, American Family issued a check for $498.38 for the property damage to Wilson's vehicle.  [*Id.* at ¶ 7.]  On May 14, American Family obtained a copy of the accident report showing no injuries.  [*Id.* at ¶ 8.]  Tomlinson again contacted Wilson on May 16 and offered $200 to settle her uninsured motorist claim.  [*Id.* at ¶ 9.]  Tomlinson expressed her concerns regarding Wilson's claim, including that Mid-Town solicited Wilson, Wilson's described mechanism of injury was opposite of the typical whiplash injury, and Wilson's vehicle was minimally damaged.  [*Id.*]  Wilson declined the offer, and on May 28 her counsel informed American Family of her intent to forward a demand upon completion of treatment.  [*Id.* at ¶ 13.]

American Family continued to investigate Wilson's claim.  American Family photographed the vehicles and accident scene and interviewed Schuerman regarding the accident.  [*Id.* at ¶¶ 16–18; Docket No. 36, Ex. C at 1–2.]  Schuerman admitted that the accident was his fault, explaining that he was traveling too fast and "tapped" Wilson's car.  He said that his car did not skid and that the impact did not displace anything in his vehicle or cause his seatbelt to lock.  He estimated that his speed before impact was less than five miles per hour.  American Family forwarded the details of its investigation to an analyst, who concluded that Schuerman's car was traveling between five and eight miles per hour before impact.  The analyst further concluded:

> [b]ased upon these accelerations and numerous biomechanical studies involving human volunteer testing, no chronic injury would be expected for the driver of [Wilson's vehicle].  However, the possibility of transient (< 1 week) cervical injury may exist.

[Docket No. 36, Ex. E at 2.]

On October 3, American Family offered Wilson $1,000 to settle her uninsured motorist claim, advising Wilson's counsel of concerns regarding minor damage and immediate chiropractic care.  [Docket No. 36, Ex. B at ¶ 25.]  On November 18, Wilson responded with a demand of $25,000.  [*Id.* at ¶ 26.]  American Family increased its offer to $1,600 on December 19 and reiterated its concerns.  [*Id.* at ¶ 27.]

On January 14, 2004, Wilson sued Schuerman for negligence and American Family for an unstated cause of action.  [Docket No. 36, Ex. A.]  On February 29, 2008, Wilson amended her complaint to add claims of breach of contract and bad faith against American Family. [Docket No. 36, Ex. H.]  The trial court bifurcated the matter for trial with the newly added claims to be heard at a later date.  [Docket No. 36, Ex. J at 5.]   The case proceeded to trial on the negligence claim, and a jury awarded Wilson $7,000 in damages on April 9, 2008.  [Docket No. 36, Ex. F at 4.]  American Family removed the breach of contract and bad faith claims to federal court on April 22, 2008.  [Docket No. 1.]

3

### III.    Discussion

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

### A.    Breach of contract

Wilson alleges that American Family breached the insurance contract by "refus[ing], without just cause, to pay a reasonable sum in settlement of [her] claim."  [Docket No. 1, Ex. 1 at ¶ 10.]  American Family argues that summary judgment is appropriate because it had just cause to refuse to settle the claim.

The undisputed facts do not support a breach of contract claim.  Within eight days of Wilson's accident, American Family paid the total repair bill of $498.38 for property damage to Wilson's vehicle.  [Docket No. 36, Ex. B at ¶¶ 7, 9.]  Further, within seven months of the accident, American Family offered Wilson $200, $1,000, and $1,600 to settle her bodily injury claim.  Given the evidence collected during American Family's investigation—Wilson's described mechanism of injury, Mid-Town's solicitation of Wilson, and Schuerman's statement that he merely "tapped" Wilson's car and that his seatbelt did not lock and no items in his vehicle were displaced—American Family reasonably declined to settle Wilson's claim for the amount she demanded.  Summary judgment is therefore proper on Wilson's breach of contract claim.

### B.    Breach of duty of good faith and fair dealing

Wilson also alleges that American Family breached its duty of good faith and fair dealing.  Specifically, Wilson alleges that American Family engaged in unfair claim settlement

practices, including:

> A) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's uninsured motorist claim after liability has become reasonably clear;

> B) Compelling Plaintiff to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

> C) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

[Docket No. 1, Ex. 1 at ¶ 17.]  American Family argues that summary judgment is appropriate because it had a good faith basis to dispute the value of Wilson's uninsured motorist injury claim.  [Docket No. 37 at 2.]  Wilson responds that issues of material fact preclude summary judgment.  [Docket No. 67 at 25, 29.]

Indiana recognizes a legal duty implied in all insurance contracts that an insurer deal in good faith with its insured.  *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993).  This duty includes the obligation to refrain from unjustifiably refusing to pay policy proceeds.  *Id.* at 519.  An insurer does not fail to deal in good faith simply because it erroneously denies a claim or fails to diligently investigate a claim.  *Id.* at 520.  "[A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith. . . . That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana."  *Id.*  An insurer breaches this duty when it denies liability without a rational, principled basis.  *Id.*

Indiana appellate courts have applied *Erie Insurance Co.* in a variety of cases.  Summary judgment for the insurer has been held inappropriate when the insured presented evidence that

the insurer may have intentionally failed to investigate, *Gooch v. State Farm Mut. Ins. Co.*, 712 N.E.2d 38, 41 (Ind. Ct. App. 1999), and when the insured presented expert opinions that there was "no reasonable basis" for the insurer to dispute coverage, *Nelson v. Jiminson*, 634 N.E.2d 509, 512–13 (Ind. Ct. App. 1994).  Conversely, summary judgment for the insurer has been affirmed when the insurer had a good faith legal argument for disputing the claim, *Freidline v. Shelby Ins. Co.*, 77 N.E.2d 37, 42 (Ind. 2002), when the insurer misread a report and misconstrued case law without conscious wrongdoing, *Masonic Temple Ass'n v. Ind. Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 29–30 (Ind. Ct. App. 2002), and when the insured presented no evidence that the insurer had a culpable mental state, *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998).

Wilson relies on *Nelson v. Jiminson* for her argument that American Family lacked a rational, principled basis to value her claim at $1,600.  [Docket No. 67 at 30.]  But *Nelson* differs from Wilson's case.  In *Nelson*, the plaintiff was injured by an uninsured motorist and filed an uninsured motorist claim against her insurer.  She valued her claim at the policy limits; the insurer valued the claim for substantially less.  After five years, the insurer ultimately conceded that her claim was worth in excess of the policy limits.  The plaintiff brought a bad faith claim against her insurer and provided two expert opinions that "there was no reasonable basis" for the insurer to have disputed her claim's value.  634 N.E.2d at 512.  The plaintiff also showed that the insurer lost important documents from her file and that her attorney had repeatedly tried to convince the insurer of the claim's value.  The Indiana Court of Appeals held that this evidence of bad faith was sufficient to create an issue of fact for the jury.  *Id.* at 513.

Like the plaintiff in *Nelson*, Wilson presented an expert affidavit from Joseph Hoffman

which concluded that "American Family did not have a reasonable basis for reaching their claim conclusion, and defending their inappropriate evaluation requires a conscious effort to be unfair to Olga Wilson."  [Docket No. 67, Ex. 20 at ¶ 10.]

American Family moved to strike Hoffman's opinion for two reasons.  [Docket No. 69 at 17.]  First, American Family argues that Hoffman was not timely disclosed.  However, the Court extended the deadline for Wilson to disclose her expert witness reports until September 21, 2009, and Wilson filed Hoffman's report on that date.  [Docket Nos. 66, 68.]  Second, American Family argues that Wilson's counsel stated at a June 15, 2009, hearing that she would not use an expert witness in response to summary judgment.  [Docket No. 69 at 17.]  It is true that Wilson's counsel stated that she did not "anticipate" using an expert in response to summary judgment. However, the following exchange occurred at the end of the hearing:

> THE COURT:        Miss Dapper, am I right?  You are not planning to use an expert for summary judgment?
>
> MS. DAPPER:       At this point, we don't anticipate it.  I would assume at this point, it depends on what we hear at the depositions.
>
> THE COURT:        I will not put that in my ruling, and I am not going to confine anybody to anything in that regard.  If she decides at some point she wants to use an expert and you think that that is inappropriate and there is prejudice, I will listen to that argument at that point.

[Docket No. 72 at 41–42.]

Thus, Wilson's counsel did not represent that she would not use an expert witness. Rather, she merely represented to the Court that she did not anticipate doing so, but qualified that this depended upon deposition testimony.  The Court, in turn, stated that it would not at that point preclude expert testimony, but instead would entertain any argument American Family wanted to make at the appropriate time that use of such an expert would be prejudicial.

American Family does not now argue that it is prejudiced by Wilson's use of Hoffman.  Further, while Hoffman's qualifications are not entirely clear from the designated evidence, Wilson included Hoffman's curriculum vitae as part of her expert disclosure [Docket No. 68, Ex. C], and American Family does not challenge Hoffman's qualifications.  For these reasons, the Court denies American Family's motion to strike.

Although the Court declines to strike Hoffman's report, this does not mean that Wilson's bad faith claim necessarily survives summary judgment.  In actuality, Wilson makes little use of Hoffman's report at summary judgment.  The only portion of Hoffman's report designated or otherwise relied upon by Wilson is paragraph ten, in which Hoffman states, "American Family did not have a reasonable basis for reaching their claim conclusion, and defending their inappropriate evaluation requires a conscious effort to be unfair to Olga Wilson."  [Docket No. 67, Ex. 20 at ¶ 10.]  This Court is not bound by such a conclusory statement.  *Cf. Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) ("We have said over and over that an expert's *ipse dixit* is inadmissible.  'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'").  As in *Wendler*, Hoffman supplies nothing but a bottom line.

Even if the Court were to overlook Wilson's failure to designate anything beyond paragraph ten of Hoffman's report, Hoffman improperly concludes without any analysis that the adjuster was allowed to "self manage" the file [*Id.* at ¶ 7]; that American Family "ignored" Wilson's treatment records [*Id.* at ¶ 8]; and that American Family acted improperly in not obtaining an independent medical report and declining mediation [*Id.*].  Hoffman accuses American Family of "mishandling" Wilson's claim without providing any specifics.  [*Id.* at ¶ 9.]

8

Hoffman claims that the depositions of Thomas McKeon and Nakia Tomlinson "suggest" American Family disapproved of Wilson's doctor and created a "willingness to ignore their fiduciary duty to Ms. Wilson."  [*Id.*]  This sweeping conclusion by Hoffman is made without any specific reference to deposition testimony of McKeon or Tomlinson.  Instead, the Court is left to guess as to what portions of their depositions, if any, support these accusations.  But the Court cannot and will not participate in such a guessing game.  It is incumbent upon Hoffman in his report and Wilson in her summary judgment brief to point specifically to the evidence that supports Wilson's claims.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

This is particularly so in this case given American Family's citation to evidence demonstrating that it did investigate Wilson's claim, which included interviewing the drivers involved and photographing the vehicles.  American Family's investigation also considered the nature of the impact, the claimed injuries, and the chiropractor-solicited medical treatment Wilson received, which taken together gave American Family a good faith basis to question Wilson's claim.  Nevertheless, American Family paid all of Wilson's property damage claim and made a settlement offer on the personal injury claim that proved more reasonable than Wilson's last demand relative to the ultimate jury verdict.

In sum, Wilson's case differs from *Nelson* because Wilson has presented no reliable evidence from which a jury could infer a culpable mental state.  Instead, the evidence shows that American Family worked reasonably promptly to resolve Wilson's claim and based its evaluation on information obtained in its thorough investigation.

More closely resembling Wilson's case is *Becker v. American Family Insurance Group*,

697 N.E.2d 106 (Ind. Ct. App. 1998).  In *Becker*, the plaintiff was involved in a car accident with an uninsured motorist and brought an uninsured motorist claim.  The insurer determined that the plaintiff was more than fifty percent at fault and denied coverage.  The plaintiff sued the uninsured motorist and the insurer.  The jury returned a verdict for the insured, but also found that he was forty-five percent at fault.  In upholding the trial court's grant of summary judgment on the plaintiff's bad faith claim, the Indiana Court of Appeals reasoned:

> This assessment [of fault] by the jury demonstrates that there was a rational basis for the denial of [insured's] claim.  Although the jury's verdict ultimately established that [insurer] erroneously denied the claim, it further established that the issue of whether [insured] was more than 50% at fault for the accident was difficult to determine.  As a matter of law, [insurer's] denial of [insured's] claim did not amount to bad faith.

*Becker*, 697 N.E.2d at 108.  Similarly, Wilson and American Family disputed the value of Wilson's claim—Wilson demanded $25,000 and American Family offered $1,600—and the jury's verdict of $7,000 demonstrated that Wilson's damages were fairly minimal and ultimately more accurately valued by American Family than by Wilson.  As in *Becker*, the fact that American Family did not offer $7,000 does not amount to bad faith. Rather, it represents American Family's rational, though ultimately incorrect, evaluation of Wilson's claim based on material information such as Wilson's statement, Schuerman's statement, the damage to Wilson's vehicle, and the reputation of Wilson's chiropractor and his solicitation of Wilson.

Wilson also argues that American Family acted in bad faith by failing to fully investigate her claim.  She believes her claim was not fully investigated because American Family did not use "all information": American Family did not request an independent medical exam or interview the passenger involved in the accident, Wilson's coworkers, or Wilson's husband. [Docket No. 67 at 27–28.]  But the cases Wilson cites do not support her argument.  *Thompson v.*

*Owensby*, 704 N.E.2d 134 (Ind. Ct. App. 1998), is about an insurer's duty to preserve evidence, and *Burr v. United Farm Bureau Mutual Insurance Co.*, 560 N.E.2d 1250 (Ind. Ct. App. 1990), addresses whether an insurer's investigation is covered by the work product privilege.  And *Hoosier Insurance Co. v. Audiology Foundation of America*, 745 N.E.2d 300 (Ind. Ct. App. 2001), simply requires an insurer to "conduct a reasonable investigation into the facts underlying the complaint."  As discussed above, viewing the summary judgment evidence most favorably to Wilson, the only possible conclusion is that American Family's investigation was reasonable. American Family's decision not to request an independent medical exam or interview additional witnesses certainly does not amount to bad faith.[1]

Because the undisputed facts demonstrate that American Family had a rational, principled basis for evaluating Wilson's claim, summary judgment on Wilson's bad faith claim is appropriate.

---

[1]Wilson also cites Indiana Code section 27-4-1-4.5, which lists as an unfair claim settlement practice "refusing to pay claims without conducting a reasonable investigation based upon all available information."  However, in addition to the previously noted shortcomings in this argument, this section is not enforceable by a private action.  Ind. Code §§ 27-4-1-2, -18 (defining who may bring an action under article 4).

**IV.     Conclusion**

        Wilson presents no evidence that American Family breached its insurance contract or

evaluated her uninsured motorist claim in bad faith.  The Court therefore grants American

Family's motion for summary judgment [Docket No. 36].

        Dated:  01/29/2010

                                        _____

                                        Tim A. Baker
                                        United States Magistrate Judge
                                        Southern District of Indiana

12

Copies to:

Theresa L. Dapper
GLASER & EBBS
tdapper@glaserebbs.com

Benjamin G Stevenson
THRELKELD REYNOLDS
bstevenson@threlkeld-reynolds.com

W. Brent Threlkeld
THRELKELD & ASSOCIATES
brent@threlkeld-legal.com